### 75548. BURNETTE v. THE STATE.
#### (362 SE2d 121)

DEEN, Presiding Judge.

The appellant, Timothy Burnette, was convicted of driving under the influence of alcohol. In the early morning hours of July 31, 1983, Burnette's vehicle collided with two other vehicles that were stopped at least partially on the road. Burnette's head struck his car's windshield with sufficient force to crack the windshield and to cut his forehead, but, to the investigating police officers and the drivers of the two other vehicles, he denied any significant injury. Because the officers noticed a strong odor of alcohol about Burnette and because Burnette could not stand up without assistance, the officers arrested Burnette. After being informed of his implied consent rights, he refused to submit to any chemical test to determine his blood alcohol content. Despite Burnette's denial of any injury, the officers transported him to a hospital, where a doctor examined and released him. At no time did the police officers or the drivers of the two other vehicles observe Burnette to be unconscious.

At the trial, Burnette testified that he had had only two drinks that night (before 11:00 p.m.), while dining with his girl friend. He also claimed that (1) he was dazed from his head striking the windshield; (2) he actually had slipped in and out of consciousness; (3) he had asked for an ambulance several times; and (4) he had not refused to take a chemical test, but had merely stated that he would not take one until he had received medical attention. *Held*:

1. Burnette contends that the trial court erred in refusing to charge the jury that the police officer would have been authorized to have a blood alcohol test performed on Burnette when Burnette was unconscious. If a driver of a vehicle is unconscious and therefore incapable of refusing to consent to a blood alcohol test, a police officer may have a blood sample taken while the person is unconscious. OCGA § 40-5-55 (b); *Holmes v. State*, 180 Ga. App. 787 (350 SE2d 497) (1986). However, in this case, it was uncontroverted that at the time the police officer advised Burnette of his informed consent rights and requested him to submit to a blood test, Burnette was conscious. The trial court properly declined to give the jury charge requested by Burnette.

2. The trial court admitted into evidence several photographs of the intersection where Burnette's vehicle collided with the other two vehicles. One of these photographs was taken at night, with the road

obviously illuminated by a vehicle's headlights. In response to Burnette's objection that the photograph should be excluded because the light's "origin and accuracy could not be accounted for," the trial court obscured with masking tape the beam of light shown in the photograph. Burnette's objection before the trial court was picayune; it is absolutely worthless before this court.

3. In cross-examining Burnette, the prosecutor asked him if he knew where his former girl friend lived and whether he could have called her to testify on his behalf. Relying upon *Pritchard v. State*, 160 Ga. App. 105 (286 SE2d 338) (1981), Burnette contends that this line of questioning was impermissibly burden-shifting. Unfortunately for Burnette, however, *Pritchard* expressly approved such a line of questioning.

*Judgment affirmed. Birdsong, C. J., and Pope, J., concur.*

DECIDED OCTOBER 15, 1987.

*Alan C. Manheim*, for appellant.
*Patrick Head, Solicitor*, for appellee.