## A92A1560. MANLEY v. THE STATE.
(424 SE2d 818)

BEASLEY, Judge.

A jury convicted Manley of driving under the influence of alcohol to the extent that it was less safe for him to drive, OCGA § 40-6-391 (a) (1), and having a blood alcohol concentration of .12 grams of alcohol or more within three hours after being in actual physical control of a moving vehicle, former OCGA § 40-6-391 (a) (4). Both charges stemmed from the same incident. The court merged the second count into the first and sentenced only on count one ("less safe"). Manley's motion for new trial was denied.

The sole challenge is that the trial court erred in allowing evidence of the Horizontal Gaze Nystagmus Test (HGN) to be presented to the jury "when the test did not reach a level of verifiable certainty and acceptance by the scientific community for the purposes used in this case." The HGN is a test manifesting an involuntary rapid and then slow jerk of the eye. It is one of the field sobriety tests used as an indicator of alcohol or other drug use. See *Mendoza v. State*, 196 Ga. App. 627, 628 (1) (396 SE2d 576) (1990). It was administered to Manley along with several other field sobriety tests. Via a motion in limine and objections at trial, Manley sought to exclude all evidence pertaining to the HGN test on the ground that the test is not generally accepted by the scientific community as a reasonable means of determining sobriety or the lack thereof.

"In determining whether a given scientific principle or technique is a phenomenon that may be verified with such certainty that it is competent evidence in a court of law, trial courts have frequently looked to see whether the technique has gained general acceptance in the scientific community which recognizes it. Frye v. United States, 293 F 1013 (D. C. Cir. 1923); *Salisbury v. State*, 221 Ga. 718 (146 SE2d 776) (1966). An evaluation of whether the principle has gained acceptance will often be transmitted to the trial court by members of the appropriate scientific community testifying as expert witnesses at trial. . . . [T]he Frye rule of 'counting heads' in the scientific community is not an appropriate way to determine the admissibility of a scientific procedure in evidence. . . . [I]t is proper for the trial judge to decide whether the procedure or technique in question has reached a scientific stage of verifiable certainty, or in the words of Professor Irving Younger, whether the procedure 'rests upon the laws of nature.' The trial court may make this determination from evidence presented to it at trial by the parties; in this regard expert testimony may be of value. Or the trial court may base its determination on exhibits, treatises or the rationale of cases in other jurisdictions. [Cits.] The significant point is that the trial court makes this determination based on the evidence available to [it] rather than by simply

calculating the consensus in the scientific community. Once a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, without receiving evidence, that the procedure has been established with verifiable certainty, or that it rests upon the laws of nature." *Harper v. State*, 249 Ga. 519, 524 (1) (292 SE2d 389) (1982).

In this case, the trial court denied Manley's motion in limine after concluding that the HGN test had been used like any of the other accepted field sobriety tests and was valid for the purpose of indicating the presence of alcohol, especially in light of the fact that the officer did not rely solely on the HGN test but used it instead in conjunction with other tests and observations.

The court's decision to allow the HGN evidence as a valid field sobriety test followed, inter alia, detailed expert testimony at the motion in limine hearing to the effect that the HGN test had reached a stage of verifiable certainty in the medical community as being an indicator of something wrong with the central nervous system or the vestibular apparatus or the eye; that one of the factors that might create horizontal gaze nystagmus was the presence of alcohol or drugs; and that although the test originated in the medical community, it was a scientifically reliable field sobriety evaluation — a tool and reliable indicator along with others of the influence of alcohol.

Based on the evidence, the court did not err in ruling the HGN test admissible as valid to show a symptom indicative of, though not determinative of, the presence of alcohol.

Had it been error to admit the HGN evidence, it would have been harmless in light of the other overwhelming evidence of Manley's guilt. *Foster v. State*, 204 Ga. App. 632 (420 SE2d 78) (1992); *Ross v. State*, 192 Ga. App. 850 (1) (386 SE2d 721) (1989). Radar detected Manley traveling at an excessive rate of speed and he was pulled over. While the police officer was talking with Manley beside the roadway, he noticed the odor of alcohol on Manley's breath, that he was unsteady on his feet, that his eyes were bloodshot, and that his speech was slurred. The officer performed several field sobriety tests on Manley prior to the HGN test. He conversed with Manley to determine, inter alia, his attitude. Manley was cooperative though quiet and nervous. He admitted to the officer that he had had a couple of drinks at a trade show. The officer than asked Manley to recite the alphabet from "D" through "P." Manley recited from "A" to "R." He was then instructed to take nine steps, touching heel to toe with each step and counting out loud. Manley stepped off the straight line, used his arms to balance, and did an incorrect number of steps. An alco-sensor test was positive for blood alcohol. A later-administered Intoximeter 3000 test revealed a blood alcohol level of .13.

*Judgment affirmed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED OCTOBER 29, 1992 —
RECONSIDERATION DENIED NOVEMBER 17, 1992 

*Moore & Davidson, W. Keith Davidson,* for appellant.
*Gerald N. Blaney, Jr., Solicitor, David M. Fuller, Allison L. Thatcher, Assistant Solicitors,* for appellee.